THE PEOPLE OF THE STATE OF NEW YORK ex rel. EUGENE D. HOFELLER, Respondent, *v.* GEORGE S. BUCK and Others, as and Constituting the Council of the City of Buffalo, and Others, Appellants.

Fourth Department, July 6, 1920.

**Municipal corporations — mandamus to compel removal of news-stands placed on streets in city of Buffalo — when peremptory writ should issue — legality of such encroachments question of law — private news-stand not public convenience — nuisance.**

The question as to whether news-stands placed in the public streets of the city of Buffalo by private interests for the sale of newspapers and magazines constitute an unlawful incumbrance upon the streets is a question of law, not of fact, where there is no dispute whatever as to the facts involved. Hence, in a proceeding by mandamus to compel the removal of such stands brought on the relation of a taxpayer the court may issue a peremptory writ and the appellants are not entitled to an alternative writ upon the theory that the news-stands are a public use and convenience.

The assertion of the appellants that such stands are serving a public convenience and are not substantially interfering with the traffic of the streets is a statement of a conclusion of law and does not raise an issue of fact.

The primary purpose of streets is for the use of the public for travel and transportation, and any private obstruction or encroachment which interferes with such use is a nuisance, and the removal thereof may be compelled by mandamus.

APPEAL by the defendants, George S. Buck and others, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 24th day of February, 1920, granting a peremptory writ of mandamus.

*William S. Rann* [*Frank C. Westphal* of counsel], for the respondents, appellants.

*Harold J. Adams*, for the intervening appellants.

*Franklin R. Brown*, for the relator, respondent.

HUBBS, J.:

This is an appeal from an order of the Special Term granting a peremptory writ of mandamus requiring the removal of twenty-five news-stands from the public streets of the city of Buffalo. No question is made here but what the action was properly brought by the plaintiff or as to the jurisdiction of the court. It is the contention of the appellants that an alternative writ, rather than a peremptory writ, should have been granted. There is no dispute about the size of the stands or their location. The argument of the appellants that an alternative writ should have been issued is based upon the contention that the stands in question fall within the same category of street encroachments as hydrants, hitching posts, telegraph poles and hackstands, and that they constitute a public use and a public convenience, or, at least, that it is a question of fact to be determined upon a trial of the issues. In other words, the appellants insist that their contention that newsstands are a public convenience and fall within the class indicated makes that a question of fact. The Special Term held otherwise. (See *Matter of Hofeller* v. *Buck*, 110 Misc. Rep. 402.) I am unable to see, when there is no dispute about facts, how opposite contentions and inferences make questions of fact for a jury. All of the facts were before the court undisputed and it seems to me that the Special Term was clearly right in holding that there was only a question of law for its determination. The question was simply this: Do news-stands, built of wood, two feet in width, from four to five feet in length, with a top covering, placed in the public streets

of the city of Buffalo by private interests for the sale of news-papers and magazines, constitute an unlawful incumbrance of said streets?

The assertion of the appellants that such stands are serving a public convenience and are not substantially interfering with the traffic on the streets is a statement of a conclusion of law and does not raise an issue of fact. (*Matter of Long Acre Electric Light & Power Co.*, 51 Misc. Rep. 407.)

It is elementary law that the public is entitled to the free and unobstructed use of city streets and that any obstruction of such streets for private use interferes with the public right, constitutes a nuisance and may be removed at the suit of any interested citizen. There are certain exceptions to this general statement, as where there are temporary obstructions or obstructions which the courts have considered as not amounting to a substantial interference with traffic and as permissible and not in conflict with the purposes for which streets and highways are maintained. (*Callanan* v. *Gilman*, 107 N. Y. 360; *Cohen.* v. *Mayor, etc.*, 113 id. 532.)

It is stated in the elementary works on municipal corporations to be a diversion of the public streets for private use to permit them to be used for news-stands. (Dillon Mun. Corp. [2d ed.] § 680; McQuillan Mun. Corp. § 1355.)

The primary purpose of streets is for the use of the public for travel and transportation and any private obstruction or encroachment which interferes with such use is a nuisance.

Under these general rules it has been held repeatedly that storekeepers cannot use any part of the sidewalk for their show cases, show windows, and other like purposes as the right of the public is absolute and paramount and the public has the right to the use of the entire street. There are exceptions, of course, as where the obstructions are for a public use, like hitching posts, stepping stones, watering troughs, and things of that kind, and the appellants base their argument chiefly upon the proposition that news-stands have now become a public use or a public benefit which justifies their existence upon public streets.

It is conceded that a municipality has no right or authority to grant a license for the use of the public streets in an unlaw-ful and illegal way, and that if the news-stands in question are

unlawful and constitute obstructions it makes no difference whether or not they were authorized by the city of Buffalo or how long the city has permitted them to be so used, for a city holds the streets for the public use of all the people. (*Shipston* v. *City of Niagara Falls*, 187 App. Div. 424.)

Thus far I think the counsel for all of the parties are in substantial agreement. While many authorities are cited where specific encroachments have been placed upon streets, they are in substantial harmony as to these general principles of law.

It seems to me that the decision of the Special Term can be sustained upon the authority of the only case in this State which has been cited or which I have been able to find, involving the question of the legality or illegality of a news-stand upon a public street. That is the case of *People ex rel. Pumpyansky* v. *Keating* (168 N. Y. 390). If I understand that case correctly it is an authority sustaining the granting of the writ in this case.

Subdivision 3 of section 86 of the Consolidation Act (Laws of 1882, chap. 410, as amd. by Laws of 1896, chap. 718)[*] authorized the common council of the city of New York to grant permits for the erection of news-stands under the stairways of elevated railroad structures. The relator applied for a writ of mandamus directing the defendant, as commissioner of the department of highways of the city of New York, to remove a certain news-stand constructed under a stairway of an elevated railroad. The Special Term refused to grant the writ, apparently upon the ground that the city, under such statute and under sections 680 to 683, inclusive, of the then revised ordinances of the city of New York, had the right to authorize the maintenance of such news-stand. It was the contention of the relator that the act of 1896 was repealed by the Greater New York charter (Laws of 1897, chap. 378), and that, therefore, the city had no authority to grant permission for the erection of such news-stand and that its act in so doing was illegal. The case was reported in the Appellate Division (62 App. Div. 348). Mr. Justice HATCH, who wrote the prevailing opinion, states the question as follows:

* See, also, Laws of 1897, chap. 311, amdg. said § 86, subd. 3.— [REP.

" Has the municipal assembly power and authority to grant such a license as the one in question for the use of the public highways of the city."

The law permitting the construction of the elevated railroad and the construction of the railroad practically excluded the public from the use of that portion of the street where the stand stood. The stand was placed in the angle under the stairway of the railroad structure, a space already appropriated to the use of the railroad and from which the public were excluded. The Appellate Division held, therefore, that the act of the Legislature in permitting the license to be granted for a stand in such a place was legal as it was a waste portion of the street and such use did not constitute an invasion of the public rights.

It further held, however, as follows: " Inasmuch as it is in fact an appropriation of a part of the street for private use, it must be sanctioned by some law giving to the municipal authorities the right to grant a permit for its erection and maintenance."

From the foregoing it will be seen that the question was treated from both sides as a question of whether or not there was a statute in existence permitting the city to grant the right to use the space for news-stands. It was not contended by either side that the city could grant any such right unless by virtue of such statute. The Appellate Division then held that the act of the Legislature granting the city the right to authorize the erection of the news-stand had been repealed, Mr. Justice HATCH saying: " It seems to us manifest that the provisions of the act of 1896 permitting the erection of such stands and booths as the one in question are repealed, and the relator is entitled to the relief for which he prayed. If we are correct, therefore, in this view, there did not exist any authority in the municipal assembly to grant a permit for the erection of this structure, consequently there is no authority for its existence." The court reversed the order of the Special Term and directed that a peremptory writ issue.

When the case reached the Court of Appeals, that court said there were two questions for review:

"(1) Has the relator, merely as a resident and citizen of the city of New York, a right to maintain this proceeding?

"(2) Has the municipal assembly power to grant such licenses as the one in question? "

The court held that the relator had the right to maintain the proceeding. It then said: "As to the remaining question, whether the municipal assembly had power to grant this license, the answer depends upon a construction of the Consolidation Act read in connection with the Greater New York Charter."

It will thus be seen that the court placed the right, if any, of the city to grant permission for the structure upon the statute in question. The court then held that the statute was still in force and had not been repealed, and that, under that act, the city had the right to grant a permit which did not exceed the limits specified in the act. At the bottom of page 397 the court said: " It is evident that the statute of 1896 did not contemplate any encroachment upon the street, and if in this case there is an obstruction of the sidewalk, it would be competent for the court to require *the portion of the structure so obstructing to be removed.*"

In effect, the court said that if the structure were larger or extended farther than permitted by the enabling act it would be an unlawful obstruction to that extent and the court could require it to be removed. The opinion then goes on to say that as a peremptory writ had been issued the record must show a clear right to the relief; that the order granted by the Special Term required the removal of the *entire* booth or news-stand in question; and that the petition stated that the stand constituted an incumbrance to the street and occupied a portion theretofore used by pedestrians, but did not indicate to what extent the news-stand encroached upon the traveled portion of the street or that portion outside of the portion which the statute permitted to be used for a news-stand. The court held that, in view of that condition of the record, an alternative writ should have been issued and the petitioner should have established to what extent the street had been obstructed outside of the portion which could legally be used for a news-stand and if the proof established at the trial that there was an obstruction outside of the space which could legally be used, a judgment should be entered commanding the removal of such portions of the structure as encroached

upon the street, that is, as were outside of the space which could legally be used under the terms of the statute.

If I am right in my understanding of this decision, it was a holding by the Court of Appeals that a municipality could not legally grant a permit for the erection and maintenance of a news-stand upon a public street except in accordance with the provisions of the statute in question which allowed a news-stand to be erected in the angle under the stairs of the elevated railroad, a space which had been appropriated and removed from use for street purposes; that if any portion of the stand in question extended beyond the line permitted by the statute it was an unlawful obstruction and the court should grant a judgment directing its removal to the extent which it extended beyond the point permitted by the statute; and that the only reason why a peremptory writ was denied was because the record did not show the exact extent of the obstruction outside of the space authorized by the statute to be used for a news-stand.

It seems to me, therefore, that the decision of the Court of Appeals in that case is exactly in point in this case and requires us to affirm the order of the Special Term. Such conclusion is in accordance with well-settled principles of law. The policy of the law is to maintain the public streets open and free from obstructions. Certain exceptions have been made but other exceptions should not be lightly made. It would be a dangerous precedent to permit a jury to say that the obstructions in question did not constitute an unlawful encroachment upon the street. If such obstructions were permitted it would open the way for the allowance of other obstructions, permission for the allowance of which could be urged with equal plausibility and cogency. I advise that the order be affirmed, with costs.

All concur.

Order affirmed, with costs.